(64 Misc. Rep. 445.)

## AKHURST v. NATIONAL STARCH CO.

(Supreme Court, Special Term, Oneida County.   September, 1909.)

DISCOVERY (§ 48*)—EXAMINATION OF ONE NOT A PARTY.

Plaintiff cannot, under Code Civ. Proc. § 871 et seq., take the deposition of one not a party, after the commencement of the action, to enable him to frame his complaint, unless absolutely necessary for that purpose.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 62, 63; Dec. Dig. § 48.*]

Action by Sidney A. Akhurst against the National Starch Company for personal injuries.  Defendant moves to vacate an order for examination before a referee of a witness to enable plaintiff to frame his complaint.  Granted.

The defendant is a foreign corporation, and operates a plant for the manufacture of starch in the city of Oswego, N. Y.  Starch is made from corn, and in the process the corn is soaked and ground, and the ground corn is then-dried in kilns.  The drying process requires heat of a high temperature.  The plaintiff states in his affidavit that he had charge of the drying process, and worked in and about the drying kilns of the defendant's plant, where the vapors and gases arising from the drying starch and the dust from the dried starch gathered on his face and with his perspiration got into his eyes, from which, combined with the intense heat, he suffered pain in his eyes and has become blind; that he is informed and believes that chemicals and other materials and substances were used in the manufacture of starch, which are dangerous and injurious to the eyes and were carried to his eyes in such vapors, gases, and dust; and that his blindness was caused by these dangerous and injurious chemicals, materials, and substances, and the great heat existing in the kilns. The plaintiff then states in his affidavit that he "is without knowledge or information of, and does not know, what substances, materials, and chemicals are used in the making of starch, and is without knowledge or information of, and does not know, what particular injurious substances, chemicals, or materials have caused the injuries sustained by him."  Plaintiff states, further, that he was ignorant of the presence of such dangerous and injurious substances, materials, and chemicals in the work in which he was so engaged, and that the defendant was negligent in failing to inform him of their presence and guard him from injury therefrom.  Plaintiff in his affidavit further states that "one Fred Rossdeutscher is an expert chemist employed by the defendant, and is the only person who knows or has knowledge of what substances, materials, and chemicals enter into the composition of starch, and that he, the plaintiff, cannot frame a complaint or state a cause of action against said defendant without knowing the nature and kind of substances, materials, and chemicals which enter into the composition of starch, and the dust, gases, and vapors arising therefrom, and that plaintiff cannot obtain this evidence from any other person or source except the chemist aforesaid, and that an examination of said Fred Rossdeutscher is material and necessary for the plaintiff in order to prepare and frame his complaint herein, and that his testimony is material and necessary for the plaintiff for these purposes."

E. J. Mizen, for plaintiff.
E. B. Powell, for defendant.

DE ANGELIS, J.   Three questions arise: (1) Whether or not, after action brought, the plaintiff may take the deposition of a witness as such to enable him to frame his complaint; (2) whether or not, assuming the first question might be answered favorably to the plaintiff, such a deposition should be required, except in a case of absolute

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

necessity; and (3) whether or not the plaintiff has shown an absolute necessity for the information sought by the order here assailed. Throughout the consideration of the questions involved, it must be borne in mind that the action is one at law, having no element of equitable jurisdiction, and that the examination sought is that of a witness, as such, and not that of a party.

The alleged authority to sustain the order is section 871 of the Code of Civil Procedure and the associated sections. A brief reference to the course of the law which led to the enactment of these provisions of the Code of Civil Procedure seems to be necessary. In this connection it is needful to recall the history of equitable jurisdiction both in this state and in England; but I shall not attempt extended reference to that history, as the text-books on the subject fully cover the ground.

The particular equitable jurisdiction exercised by the Court of Chancery in England and adopted by the courts of our state before legislative regulation interfered with the subject, pertinent to our inquiry, is known as the "auxiliary or adminicular jurisdiction." As bearing on this topic I quote from Story's Equity Jurisprudence (13th Ed.) the following:

"We shall now proceed to the third and last head of equity jurisdiction proposed to be examined in these Commentaries; that is to say, the auxiliary or assistant jurisdiction, which, indeed, is exclusive in its own nature, but, being applied in aid of the remedial justice of other courts, may well admit of a distinct consideration." Section 1480.

"What we propose particularly to consider in the subsequent discussions is the remedial process of bills of discovery, bills to perpetuate testimony, and bills to take testimony de bene esse pending a suit, all of which are most important instruments to be employed as adminicular to the remedial justice of other courts." Section 1482.

"In a general sense, courts of equity may be said to be assistant to other courts in a variety of cases, in which the administration of justice could not otherwise be usefully or successfully attained. Thus, for example, they become assistant to courts of law by removing legal impediments to the fair decision of a question depending thereon," etc. Section 1481.

The rule of the common law required that witnesses whose testimony was to determine the issue in an action should be sworn and give their evidence at the trial before the judge and the jury, to the end that that evidence might be weighed in the light of the appearance and conduct of the witnesses. But oftentimes the administration of justice was embarrassed by the inability of parties to produce witnesses who were sick, or infirm, or beyond the reach of a subpœna. This being the situation, the Court of Chancery established a procedure by which such testimony could be obtained, and, when obtained, it was used in the common-law courts. The remedies devised for these purposes were designated "bills to perpetuate testimony" and "bills to take testimony de bene esse." Bills to perpetuate testimony were filed when no action was pending, and were designed to preserve testimony for future use in actions which could not be commenced when the testimony was taken. Bills to take testimony de bene esse were auxiliary to actions already pending, and enabled parties through commissions to get the testimony of witnesses beyond the jurisdiction of the court, of witnesses sick or infirm, that were or might be unable to attend the trial, and even the testimony of a single witness, essential to a party

in the litigation, who might die before the trial. As already indicated, no relief was sought in these suits, and their purpose was accomplished when the testimony was taken. Story, Eq. Juris. (13th Ed.) §§ 1505, 1506. In these cases the testimony could only be used upon the trial in case the witnesses could not be produced.

We have more particularly to deal with the auxiliary equitable jurisdiction exercised through bills of discovery. Such a bill has been defined as follows:

"It has been truly said that every bill for relief is in reality a bill of discovery, since it asks from the defendant an answer upon oath as to all the matters charged in the bill, and seeks from him a discovery of all such matters. But a bill of discovery, emphatically so called, * * * is a bill for the discovery of facts resting in the knowledge of the defendant, or of deeds, or writings, or other things in his custody or power, and seeking no relief in consequence of the discovery, although it may pray for the stay of proceedings at law till the discovery is made. The bill is commonly used in aid of the jurisdiction of some court of law, to enable the party, who prosecutes or defends an action at law, to obtain a discovery of the facts, which are material to the prosecution or defence thereof." Story, Eq. Pl. (9th Ed.) § 311.

This form of procedure was devised by the Court of Chancery to remove the impediment to the administration of justice caused by the fact that parties to actions could not be compelled by their adversaries to discover material facts in controversy by their oaths, nor could they be compelled to produce deeds, books, and writings in their possession material to the right, title, or defense of their adversaries. To circumvent this rule of the common law, the bill of discovery was devised; but the convenience of enabling one party to avail himself of the testimony of his adversary became at once apparent, and the bill of discovery was allowed when the testimony of the adverse party was not necessary, but convenient, because it was a speedy and easy method to get his evidence and his admissions, and thereby save the expense to the litigant and the annoyance and inconvenience to witnesses who would otherwise have to be called in an action. Story, Eq. Pl. (9th Ed.) § 324a; Pom. Eq. Juris. (3d Ed.) § 191.

It is claimed that a bill of discovery might have been filed against a party to ascertain facts upon which to frame a complaint. Glenney v. Stedwell, 64 N. Y. 120, 122. But it was the rule in chancery that a bill of discovery would not lie against a mere witness as such. Story, Eq. Juris. (13th Ed.) § 1499; Pom. Eq. Juris. (3d Ed.) § 199.

"There are some exceptions to this rule as to witnesses; but they are all founded upon special circumstances, and in general they do not seem applicable to mere bills of discovery, but only to bills for discovery and relief." Story, Eq. Juris. (13th Ed.) § 1500.

One of the alleged exceptions permits making the secretaries, bookkeepers, and officers of a corporation parties to bills of discovery. Story, Eq. Pl. (9th Ed.) § 235; Pom. Eq. Juris. (13th Ed.) § 1501. It must be noted in this connection that, following the rule in bills of discovery requiring that there should be a party plaintiff and a party defendant (for, of course, there could be no such thing as a bill of discovery without the parties plaintiff and defendant thereto), the secretaries, bookkeepers, and officers of a corporation were themselves

made parties defendant in these bills.  While the answers of such defendants could not be used against the corporation, the practice was justified, because it would enable the plaintiff to arrive at the means of obtaining better information.  This practice was anomalous.  The effect was to permit an ex parte inquiry.  The effect was to permit A., claiming to have a cause of action against B., to institute an ex parte inquisition to enable A. to to determine whether or not he could maintain his action.  This practice was severely criticised by Lord Eldon in Fenton v. Hughes, 7 Ves. Jr., 287, where he said:

"It originated with Lord Talbot (Wych v. Meal, 3 P. Wms. 310), who reasoned thus upon it: That you cannot have a satisfactory answer from a corporation.  Therefore you make the secretary a party, and get from him the discovery you cannot be sure of having from them; and it is added that the answer of the secretary may enable you to get better information.  The first of these principles is extremely questionable, if it were now to be considered for the first time; and, as to the latter, it is very singular to make a person a defendant, in order to enable yourself to deal better and with more success with those whom you have a right to put upon the record.  But this practice has so universally obtained without objection that it must be considered established."

In Story's Equity Jurisprudence (13th Ed.) § 1501, this criticism seems to be approved.  If the original innovation had required that the bill should be filed against the party against whom the testimony was to be received, in case no action was pending, or against such party in case an action was pending and authorized the examination of a witness or the taking of a deposition as part of the procedure, it would have been more in line with the bill to perpetuate testimony and the bill to take testimony de bene esse, and might then have fulfilled its real office, which was to make practicable the bill of discovery against the legal entity known as a corporation, for which some officer might speak with the authority in the premises of an individual in a suit or anticipated suit, where he was or would be a party.  Vermilyea v. Fulton Bank, 1 Paige, 37, 38.  The criticism made by Lord Eldon of the decision of Lord Talbot in Wych v. Meal, supra, seems to have been emphasized later by Lord Cottenham in Queen of Portugal v. Glyn, 7 Cl. & Fin. 466, where the decision was by the House of Lords in 1840, which decided that a person not a party to the record could not be made a party to a bill of discovery.

Early in this state there were statutory substitutes for bills to perpetuate testimony and bills to take testimony de bene esse.  They were incorporated in the first edition of the Revised Statutes, being article 1, article 2, and article 5, of title 3 of chapter 7 of part 3.  Early in this state, also, there was a statutory substitute for that part of the function of bills of discovery resorted to to compel the production of deeds, books, and writings in the possession of the adverse party material to the right, title, or defense of the party seeking the relief.  This was incorporated in title 3, c. 1, pt. 3, of the Revised Statutes, beginning at section 21.

By chapter 59, p. 66, of the Laws of 1847, the Legislature appointed the .commissioners required by the Constitution of 1846 to revise, reform, simplify, and abridge the rules and practice, pleadings, forms, and proceedings of the courts of record of this state, styled "commis-

sioners on practice and pleadings." By chapter 462, p. 630, of the Laws of 1847, it was provided that any party in any civil suit or proceeding either in law or equity, might require an adverse party or any person beneficially interested to give testimony under oath in such suit or proceeding. This statute removed the impediment in the administration of justice which led to the adoption of the bill of discovery as such in the equitable jurisdiction. The commissioners on practice and pleadings having made their report to the Legislature, by chapter 379, p. 497, of the Laws of 1848, the Code of Procedure (old Code) was adopted. This Code in express terms abolished actions to obtain discovery under oath or bills of discovery, and substituted for that procedure a provision for the examination of a party at the instance of an adverse party at any time before the trial, at the option of the party claiming the examination. Section 343 et seq. It also provided for the production of papers by order. Sections 341, 342.

By an amendment to the Code in chapter 438, p. 613, of the Laws of 1849, the numbering of the sections was changed. The section to abolish actions to obtain discovery became section 389, the section for the examination of an adverse party became section 390, and those, with the following kindred sections, retained the numbering thus made until the Code of Procedure was superseded by the Code of Civil Procedure. The sections for the production of papers became section 388, and it was extended to include books and documents, and retained that numbering while the old Code existed. This provision was held to be not in conflict with, but auxiliary to, the provisions of the Revised Statutes upon the subject. There was no provision whatever in the Code of Procedure authorizing the examination of a witness as such before trial; but the provisions of the Revised Statutes for the examination of witnesses to perpetuate testimony and for the examination of witnesses conditionally, or de bene esse, above referred to, remained unrepealed. By chapter 353, p. 744, of the Laws of 1857, section 399 of the Code of Procedure was amended, so as to permit the examination of a party to an action in his own behalf. As the Code of Procedure stood at the time it was superseded by the Code of Civil Procedure, this provision was contained in section 398, as modified by section 399.

It is needful again to call attention to the fact that, under the Code of Procedure and the law of this state as it existed from the time of the adoption of that Code up to the time of the adoption of the Code of Civil Procedure, a witness as such could not be examined before a trial, except to perpetuate his testimony, or to take his testimony de bene esse or by consent. As already stated, section 390 of the Code of Procedure provided in express terms for the examination of a party at the instance of an adverse party; and by section 391 such party could be examined at any time before the trial, at the option of the party seeking the examination. Under these provisions of the Code of Procedure, the Court of Appeals held that a plaintiff in an action pending might examine the adverse party on oath before the service of the complaint and for the purpose of obtaining facts on which to frame the complaint. Glenney v. Stedwell, 64 N. Y. 120.

It is quite likely that the commissioners on practice and pleadings, appreciating the criticism made by Lord Eldon in Fenton v. Hughes, supra, of the decision of Lord Talbot in Wych v. Meal, supra, and the opinion of Lord Cottenham in Queen of Portugal v. Glyn, supra, intentionally omitted from the Code of Procedure (old Code) any provision for the examination before trial of a witness as such. At any rate, the adoption of the Code of Procedure (old Code) abolished the bill of discovery, and our law made no provision for the examination of a witness as such, whether he chanced to be in the employment of a corporation or of an individual, except to perpetuate his testimony or to take it de bene esse, as provided in the Revised Statutes.

The provisions of the Code of Civil Procedure (new Code), adopted in 1876 (chapters 448, 449, pp. 1, 290, Laws of 1876), to take the place of the existing law upon this subject, will be found in chapter 9; and we have particularly to consider the sections beginning with section 870. By chapter 178, p. 141, of the Laws of 1880, in section 1914, was re-enacted the provision of the old Code which abolished an action to obtain a discovery under oath in aid of the prosecution or defense of another action. Title 3 of chapter 9 of the Code of Civil Procedure, composed of sections 870 to 886, inclusive, and section 1914 of the Code of Civil Procedure, was intended to take the place of sections 389 to 397, inclusive, and subdivision 7 of section 401 of the Code of Procedure (which subdivision 7 of section 401 was adopted from section 24, tit. 17, c. 8, pt. 3, vol. 2, p. 554, Rev. St. [1st Ed.]), article 1 and article 5 of title 3 of chapter 7 of part 3 of the Revised Statutes (first edition), and section 78, c. 280, p. 344, of the Laws of 1847, being 2 Rev. St. (4th Ed.) p. 374, pt. 3, c. 1, tit. 3, § 50. Title 3, c. 1, pt. 3, of the Revised Statutes, beginning at section 21 and ending at section 27, and section 388 of the old Code, were replaced by article 4 of title 6 of chapter 8 of the Code of Civil Procedure, being sections 803 to 809, inclusive.

In the printed first draft of chapters 1 to 14, inclusive, of part 3 of the Revised Statutes, as reported by the commissioners to revise the statutes of the state, pursuant to chapter 33, p. 109, of the Laws of 1870, dated March 1, 1873, the proposed legislation contained in the Code of Civil Procedure, above referred to as beginning with section 870 and ending with section 886, will be found in article 1, tit. 3, c. 9, pt. 3, page 377. The sections are not numbered as they were finally adopted; the first section being section 841 and the other sections following in order. The commissioners' note at page 377 states that they intended to consolidate the law on the subject. In the same printed draft the commissioners reported the proposed legislation to take the place of the former law for the discovery of books and papers in article 4, tit. 6, c. 8; the sections being 781 to 787, inclusive. The sections were not numbered as they were when they were finally adopted. In the printed report of the commissioners, dated December 9, 1875, and transmitted to the Legislature in January, 1876, together with the proposed chapters 1 to 13, called "Remedial Justice," the sections are numbered as they were finally adopted by the Legislature.

The note of the commissioners in the appendix, at page 530, to sections 870 to 886, inclusive, refers to what the commissioners designated as "the notable changes made in the law." There is no suggestion of a change permitting the examination of a witness before trial, except conditionally, or to perpetuate his evidence. Of course, the provision for taking evidence upon a stipulation by consent, and the provision for taking an affidavit to be used in a motion where the affiant had refused to make the affidavit, are continued. The commissioners in their said report made this statement:

"These sections consolidate the provisions of the Revised Statutes and amendatory acts, and of the Code of Procedure, relating to the examination of a party before trial, taking depositions de bene esse, perpetuating testimony, taking depositions by consent, and taking depositions for the purpose of a motion, and provide a uniform method of procedure."

But it is claimed that the commissioners and the Legislature intended, by section 871 and subdivision 4 of section 872, to authorize the examination of a witness as such at any time before trial with the same freedom and latitude with which a party could be examined. A careful reading of the provisions, it seems to me, authorizes no such claim. Section 871 and subdivision 4 of section 872 must be read in connection with subdivisions 5 and 6 of section 872, which limit all that precedes them, except what applies to a case "where the person to be examined is a party to the action." If not, why should subdivisions 5 and 6 have been adopted? It must have been upon this basis that the case of Town of Hancock v. First National Bank, 93 N. Y. 82, was decided. That case decides the question involved here squarely against the plaintiff, and there has been no change in the legislation upon the subject affecting the matter here under consideration since that decision was made.

But, assuming that the language of sections 871 and 872, standing by itself and without the light reflected upon it by the former law, is broad enough to permit the examination of a witness as such as freely before as at the trial, no one would think of making such a claim; and, if there must be limitation upon the language used, that limitation should conform to what the revisors proposed, as stated in their own language, and the several matters of procedure whose consolidation was effected. The position taken by the profession and the Court of Appeals soon after the adoption of the Code of Civil Procedure is significant. It indicates the acceptance of the conclusion that by the Code of Procedure the right to examine a witness as such, except as provided by the Revised Statutes, was not given, and that right was not, and was not intended to be, given by the Code of Civil Procedure. If, in adopting section 871 of the Code of Civil Procedure, the Legislature designed to permit the examination of a witness as such before the trial, except to perpetuate his testimony or to take his testimony de bene esse, the failure of counsel to avail themselves of, and the failure of counsel and the court to suggest, section 871 as authorizing the examination of an officer or agent of a corporation in People v. Mutual Gas Light Co., 74 N. Y. 434, and Boorman v. Atlantic & Pacific R. R. Co., 78 N. Y. 599, are difficult to account for. It would also be difficult to account for Seeley v. Clark, 78 N. Y. 220,

where the Court of Appeals held that a party in interest, although not a party to an action, could not be examined under section 870 of the Code of Civil Procedure.

It will be remembered that one of the principal exceptions to the rule under which a witness as such could not be made a party in a bill of discovery was the case of an officer or agent of a corporation. If section 871 was designed to permit the examination of a witness as such to perpetuate or reinstate that feature of the old equity practice, it is strange that the profession and the courts, presumed to know and to have in mind the history of this feature in our jurisprudence, did not say so at the time. Indeed, it became necessary to amend subdivision 7 of section 872 so as to permit the examination of those representing a corporation. In this connection it is to be particularly noted that the amendment confines the examination to "the officers or directors" of a corporation.

We may again refer to the decision of the Court of Appeals in the case of the Town of Hancock v. First National Bank, supra, where it was held that a witness as such could not be examined before trial, except to perpetuate his testimony or to take his testimony de bene esse or by consent. The opinion in that case was written by Judge Finch, a careful student of the law, and seems to me to rest upon unassailable ground. Unless we are to return to the days when, in England, it was recognized that the courts might legislate as well as adjudicate (Johnson v. Crook, L. R. 12 Ch. Div. 639, 649), we should adhere to this decision of the Court of Appeals. It may be necessary, in the changed conditions produced in the progress of human events, to enlarge the scope of ex parte investigations. Ex parte investigations are authorized by law, such as legislative investigations for the purpose of informing legislators to enable them to pass appropriate legislation, investigations of crime by grand juries, coroners' inquests, and the like. Such investigations oftentimes elicit information leading to the successful institution and prosecution of civil actions; but they are conducted in the interest of the public, and for the common good, and not for private purposes. Another illustration of such an investigation is that permitted by the Attorney General to obtain information upon which to found actions to destroy monopolies. A learned opinion upholding the statute authorizing such an investigation was written by Judge Vann in Matter of Davies, 168 N. Y. 89, 61 N. E. 118, 56 L. R. A. 855.

But to permit the examination of the employés of a corporation or the employés of an individual, to enable a party to get information upon which to frame a complaint in an action for damages against such corporation or individual, cannot be justified, if at all, without legislation for that purpose. If the employés of a corporation could be examined as witnesses before trial, why should not the servants of an individual conducting a large business in different departments be equally subject to examination? Just what information does the plaintiff desire to obtain? He tells us what he is informed caused his blindness. He says, in substance, that chemicals, materials, and substances, dangerous and injurious to his eyes, were used in the manufacture of starch where he was at work, and that these, from the

vapors arising from the drying starch, got into his eyes and, combining with the perspiration from his face and the intense heat, caused his blindness. He says that he was ignorant of the danger to which he was exposed, and that the defendant was negligent in not warning him of the danger. It seems to me that his affidavit discloses that he has sufficient information from which to frame his complaint.

It can readily be seen that the substance of his cause of action, if there exists any, is founded on the character of the chemicals and substances which he claims have been injurious to his eyes. Is this not an effort really to determine in advance whether or not he has a cause of action? It seems to me it is, and it has been expressly held that a witness, as such, may not be examined to enable the plaintiff to frame his complaint. Knowlton v. Bannigan, 11 Abb. N. C. 419. My attention has been called to no authority justifying such an examination.

In this department (Fourth department) it has been held that a plaintiff may have an order to examine witnesses as such to enable him to make his complaint more definite, when an order of the court has required a complaint to be amended for that purpose. People v. Armour, 18 App. Div. 584, 46 N. Y. Supp. 317. I am unable to reconcile this case with the decision of the Court of Appeals in Town of Hancock v. First National Bank, supra; but there the court had to deal with the question as to whether or not the people's case should be lost because of their failure to comply with an order of the court. By reason of the order of the court requiring the amendment, either the action must have been abandoned or the examination permitted. The Appellate Division felt constrained to adopt the second alternative, perhaps working out a just result, but exercising what seems to me to have been a legislative function. It is interesting to note that the opinion in this case proceeds upon an erroneous assumption. Referring to that feature of bills of discovery covering the subject of the production of books and papers now embraced in article 4 of title 6 of chapter 8 of the Code of Civil Procedure (sections 803 to 809), the learned court said:

"The provisions of the sections contained in this article, the decisions under those sections, *and the earlier decisions relating to bills of discovery in chancery*, are not germane to the questions involved in this appeal."

The italics are mine, for it is entirely certain that, not only the earlier decisions, but all the decisions relating to bills of discovery in chancery, were germane to the questions involved in that appeal.

It has been held that a witness, as such, may be examined to determine who is the proper person to sue. Matter of Nolan, 70 Hun, 536, 24 N. Y. Supp. 238; Matter of Weil, 25 App. Div. 173, 49 N. Y. Supp. 133. Here, in effect, ex parte investigations were allowed in which witnesses, as such, were called to determine against whom alleged causes of actions existed. The reverse has also been held. Matter of Schoeller, 74 App. Div. 347, 77 N. Y. Supp. 614. Schwarz v. Robinson, 129 App. Div. 404, 113 N. Y. Supp. 995, can be justified under section 885 of the Code of Civil Procedure.

My attention has been called to the case of Chittenden v. San Domingo Improvement Co., 132 App. Div. 169, 116 N. Y. Supp. 829.

There it appeared that the plaintiff had been ordered to serve a bill of particulars, and the examination became necessary to comply with the order of the court. However, I am unable to follow the reasoning of the court, and believe it to be diametrically opposed to the decision of the court in the Town of Hancock Case. It will be noted that on page 172 of 132 App. Div., page 832 of 116 N. Y. Supp., the Appellate Division of the First Department has put upon the words "or that other special circumstances exist" a construction exactly opposite to the construction put by Judge Finch upon the same words in the Hancock Case, as will be seen by reference to the opinion of Judge Finch at page 86 of 93 N. Y.

While it would be my duty to follow the Armour Case and the Chittenden Case, I should not go beyond what was actually determined, and hence should not permit the examination sought here unless it is absolutely necessary. As already indicated, I do not think the examination is absolutely necessary, and hence the motion is granted.

Motion granted, with $10 costs to abide the event.